TARA K. MCGRATH
United States Attorney
MARK W. PLETCHER
Assistant U.S. Attorney
Colorado Bar No. 034615
STEPHEN DA PONTE
Special Assistant United States Attorney
Florida Bar No. 58454
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101-8893
Email: Mark.Pletcher@usdoj.gov
Email: Stephen.DaPonte@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL HART,<br><br>Defendant. | Criminal Case No. 24-CR-0383-H<br><br>Date: February 3, 2025<br>Time: 9:00 a.m.<br><br>The Hon. Marilyn L. Huff<br><br>**SENTENCING MEMORANDUM** |

COMES NOW, the United States of America, through its counsel, Tara K. McGrath, United States Attorney, Mark W. Pletcher, Assistant United States Attorney, and Stephen Da Ponte, Special Assistant United States Attorney, and hereby files its Sentencing Memorandum based on the files and records of this case.

# I

# STATEMENT OF THE CASE

On September 24, 2024, defendant Michael Hart entered a plea of guilty to Count 1 of a Superseding Indictment charging him with Conspiracy to violate the Clean Air Act regulations and the American Inovation and Manufacturing Act regulations in violation of Title 42, U.S.C., Secs. 7671, 7675, and 7413, all in violation of Title 18, United States Code, Section 371. Mr. Hart is now before the Court for sentencing.

# II
# LEGAL AND REGULATORY FRAMEWORK

A. <u>Ozone Depleting Substances</u>

The Montreal Protocol on Substances that Deplete the Ozone Layer is a treaty adopted in 1987 and ratified by virtually every country. It calls for the gradual phase out of ozone depleting substances, with different timetables for developed and developing countries. Because Mexico is considered to be a "developing" country under the treaty, the phase down schedule created an instant black market on the border with the United States.

In the United States, the Montreal Protocol was implemented in 1990 by the addition of Subchapter VI to the Clean Air Act, which covers Stratospheric Ozone Protection (42 U.S.C. § 7671 et seq). In Section 7671a (b) of the statute, HCFC 22, also known as R22, is included on the list of Class II ozone depleting substances. Section 7413(c)(1) of the Clean Air Act provides that anyone who knowingly violates a requirement or prohibition relating to stratospheric ozone control found in subchapter VI shall be guilty of a felony, punishable by up to 5 years in prison, and fines under Title 18. The regulations that govern ozone depleting substances are found in Part 82 of Title 40 of the Code of Federal Regulations. On January 21, 2003, it became unlawful for anyone to import a Class II ozone depleting substance during a control period[1] in an amount in excess of the consumption allowance held by that person, unless the substances are for use in a process involving their transformation or destruction. 40 CFR § 82.15(b)(1). On January 1, 2020, all consumption allowances for HCFC 22 were eliminated and it became unlawful to import HCFC 22 for any purpose other than for use in a process resulting in its transformation or destruction. 40 CFR § 82.16(e)(1). The regulations further provide that, "No person may sell or distribute, or offer for sale or distribution, any Class II substance that they know, or have

---

[1] A "control period" is the period from January 1 to December 31 each year.

reason to know, was imported in violation of this section, except for such actions needed to re-export the controlled substance." 40 CFR § 82.15(g)(8).

B. <u>Greenhouse Gases</u>

HFCs are potent greenhouse gases that cause climate change. HFCs have global warming effects that can be hundreds to thousands of times more potent than carbon dioxide. For example, the release of gases from one shipping container with cylinders of R-410A is equivalent to emissions from 5,486 gasoline-powered passenger vehicles driven for one year or 3,417 homes' energy use for one year. The use of HFCs has been rapidly increasing worldwide due to the global phaseout of ozone-depleting substances (HCFCs) and increased demand for refrigeration and air conditioning.

The Kigali Amendment to the Montreal Protocol on Substances that Deplete the Ozone Layer is an international agreement to phase down the production and consumption of HFCs by 80-85% by 2047. Its full implementation is expected to avoid up to half a degree Celsius of global warming by the end of the century. The United States ratified the Kigali Amendment on October 26, 2022. Likewise, the American Innovation and Manufacturing (AIM) Act, 42 U.S.C. § 7675 et seq., was enacted by Congress on December 27, 2020, and authorized the EPA to phase down the production and consumption of HFCs by 85 percent in a stepwise manner by 2036. HFC regulations under the AIM Act are expected to secure at least 4,500 million metric tons of carbon dioxide equivalent[2] reductions between 2025-2050. As part of the AIM Act, Congress added an additional list of regulated substances, at 42 U.S.C. §7675(c)(1), which include HFC 32, HFC-125, HFC-134, HFC-134a, HFC 143 and HFC 143a. Blends that contain any of these gases are considered to be regulated substances as well. *Heating Air Conditioning & Refrigeration Distributors International v. EPA*, 71 F.4th 59, 64 (D.C. Cir. 2023).

---

[2] Carbon dioxide equivalent or CO2e is the number of metric tons of carbon dioxide emissions with the same global warming potential as one metric ton of another greenhouse gas. It is calculated using Equation A-1 located in 40 CFR Part 98.

3

To implement the AIM Act, the EPA promulgated the regulations found at 40 CFR § 84.5, which, beginning on January 1, 2022, prohibited the importation of bulk regulated HFCs without a consumption allowance. Specifically, the regulations prohibit any person from importing "bulk regulated substances, except [b]y expending, at the time of import, consumption or application-specific allowance in a quantity equal to the exchange value weighted equivalent of the regulated substances imported . . .." 40 C.F.R. § 84.5(b). "Bulk" refers to a regulated substance of any amount that is in a container for the transportation or storage of that substance such as cylinders, drums, ISO tanks, and small cans. No person may sell or distribute, or offer for sale or distribution, any regulated HFC that was imported illegally. 40 CFR § 84.5(f). If someone wished to import HFCs for purposes of using them as feedstock (to create another chemical) or for destruction, the regulations require them to petition the EPA at least 30 days before each shipment is to arrive, in order to avoid the requirement for a consumption allowance. 40 CFR § 84.25(a)(1).

## III

## SENTENCING CONSIDERATIONS

A.  The United States Sentencing Guidelines

This offense is covered by Section 2Q1.2, which provides a Base Offense Level 8.[3] Section 3E1.1(a) provides for a reduction of 2 levels for the defendant's Acceptance of Responsibility, resulting in an Offense Level of 6. The parties have agreed that this is the appropriate advisory guideline calculation. The Probation Office has determined the defendant's Criminal History Category is I. The Probation Office has also determined that the defendant meets the criteria for a Zero-Point Offender so that the offense level is reduced by an additional 2 levels pursuant to U.S.S.G. §4C1.1(a) and (b). The Offense Level of 4

---

[3] Note that the United States Probation Office determined the appropriate Guideline Section to be 2Q1.3 (which has a Base Offense Level of 6) instead of 2Q1.2 (which has a Base Offense Level of 8), explaining in Paragraph 36 of the Presentence Report that "HCFC refrigerants are not covered under USSG §2Q1.2 which applies to hazardous or toxic substances or pesticides." This statement is correct; however, in addition to HCFCs, this defendant also imported and sold HFCs which are classified as Class II ozone depleting substances. Therefore, the United States and the Defendant have both agreed in the plea agreement that Section 2Q1.2 is the most appropriate guideline on these facts.

4

and Criminal History Category I results in a guideline calculation of 0-6 months incarceration. The United States respectfully recommends a sentence of probation for 3 years, payment of restitution of $1,500, and a $100.00 special assessment.

B.  Statutory Considerations in Sentencing

Section 3553(a) of Title 18 of the United States Code sets forth the factors that the court must consider when imposing sentence. These factors will be addressed herein, in discussing how the government arrived at its sentencing recommendation.

    *i.*    *The Nature and Circumstances Of The Offense*

On October 18, 2022, Mr. Hart entered the United States at the San Ysidro POE as the driver, sole occupant, and registered owner of a white 2008 Dodge Caravan. As the vehicle was waiting in pre-primary, a CBP Officer asked Mr. Hart if he had anything to declare. Mr. Hart twice responded that he only had his tools in the van. The CBP Officer inspected the van and noticed a paint tarp covering boxes that were located on the interior floor of the van. The CBP Officer observed tools and other miscellaneous items on top of the paint tarp. When the CBP Officer moved the paint tarp, he discovered boxes with labels that described their contents as Freon 404A from China. The officer asked Mr. Hart how many boxes of Freon he had. HART stated he had eight and noted that he was using them in his employment. When Mr. Hart pulled up to the primary inspection booth, the inspector asked him if he had anything to declare. Mr. Hart said, "No, just materials and tools." The vehicle was then referred to secondary for further inspection.

In the secondary lot, a CBP Officer located a total of ten boxes, each containing one 24-pound canister identified as Freon 404A. Each canister contained a mixture of HFC-143a, HFC-125, and HFC-134a gases, all of which are illegal to import absent an allowance. A search of the EPA database showed that Mr. Hart holds no such allowance.



Officers also found four receipts within the vehicle from two different stores in Tijuana, Mexico, showing prior purchases of a total of 35 cylinders of refrigerants. The four receipts are summarized in the following table:

| Date | Store | Product (quantity) |
| --- | --- | --- |
| 07-21-2022 | OASA | Aquion 410A (1), Genetron 22 (1) |
| 10-03-2022 | Loubet | Freon 404A (10) |
| 10-10-2022 | Loubet | Freon 407C (4) |
| 10-13-2022 | Loubet | Freon 404A (11), Freon 407C (5), Freon 22 (2), R-410A (1) |

Border crossing records indicate that Mr. Hart entered the United States from Mexico on July 22, 2022; October 3 and 4, 2022; October 10, 2022; twice on October 11, 2022; twice on October 13, 2022; and once on October 14, 2022. There is no record that Mr. Hart or anyone else declared importing HFCs on any of those dates.

After being advised of his Constitutional rights and waiving his rights in writing, Mr. Hart stated that he worked repairing and installing air conditioning units. Mr. Hart stated that his girlfriend ordered the refrigerant canisters from a store in Tijuana and had them delivered to her house in Mexico. He stated that once a week he brought 10-15 Freon canisters from Mexico into the United States over the past two months. Mr. Hart stated that each canister cost approximately $130-$140 USD in Mexico. He claimed that he used some of the canisters himself when he repaired air conditioning units, and that he sold the rest of the canisters to others in the air conditioning industry for approximately $275 per canister.

A search of Mr. Hart's cellular phone identified five images of money transfer receipts to Mr. Hart's girlfriend in Mexico. The dates and amount of those transfers, as well as Mr. Hart's border crosssings around the dates of those transfers, are as follows:

| Date of Transfer | Amount | Border Crossings |
|---|---|---|
| 09-14-2022 | $620 USD | 09-14-2022 |
| | | 09-15-2022 |
| 09-20-2022 | $300 USD | 09-19-2022 |
| 09-22-2022 | $450 USD | 09-23-2022 |
| | | 09-24-2022 |
| | | 09-26-2022 |
| 09-23-2022 | $260 USD | 09-23-2022 |
| | | 09-24-2022 |
| | | 09-26-2022 |
| 10-16-2022 | $1,000 USD | 10-13-2022 |
| | | 10-14-2022 |
| | | 10-17-2022 |
| | | 10-18-2022 |

During this same timeframe, Mr. Hart posted various "for sale" listings for refrigerants on OfferUp[4] as follows:

---

[4] OfferUp is a marketplace similar to Craigslist where a seller can offer goods for sale, but a buyer cannot purchase the goods directly through OfferUp. Buyers and Sellers must communicate and reach agreement on a price and manner of payment.

7

| Date of OfferUp Listing | Refrigerants Offered for Sale |
|---|---|
| 09-01-2022 | R22, 410a, 407, 404, 134 |
| 09-13-2022 | R22, 410a, 404, 134 |
| 09-20-2022 | R22, 401a, 407, 404, 134a |
| 09-26-2022 | R22, 410a, 407c, 404a, 134a |
| 10-14-2022 | R22, 410a, 407, 404, 134 |

Records from OfferUp showed Mr. Hart had 13 postings for various types of prohibited refrigerants for sale between the dates July 14, 2022, and December 18, 2022. Mr. Hart's OfferUp records show that he offered at least 94 cylinders of refrigerants to 22 individuals from July 16, 2022 to October 14, 2022.

The refrigerants involved included R 22 (51), 410A (10), 404A (31) and 134A (2). The refrigerant 410A is composed of equal parts HFC 32 and HFC 125. R22 is made of chlorodiflouromethane, commonly known as HCFC 22. R22 is regulated not as a greenhouse gas but as an ozone depleting substance. Although the regulatory scheme is similar (involving a gradual phase out using production and consumption allowances), the production of R 22 has already been phased out completely in the United States. In fact, since January 1, 2020, it has been illegal to produce or import R 22 into the United States. Because of this import prohibition, R 22 commands a premium price in the marketplace, selling for approximately $1200-$1500 per cylinder at retail suppliers.

The nature and circumstances of the offense are serious. Defendant intentionally imported both ozone depleting substances and potent greenhouse gases from Mexico into the United States, and then resold them on the black market for a substantial profit, thereby introducing climate pollutants into the community and undermining carefully negotiated and hard-won international efforts designed to address the uniquely challenging and urgent threats of climate change and ozone depletion. Defendant, moreover, did so on many, many occasions, making his criminal conduct prolonged and durable.

### ii. The History And Characteristics Of Defendant

In mitigation, this defendant timely notified the government of his desire to accept responsibility and plead guilty, and he does appear remorseful for his crime. Defendant's crimes in this case were not violent and motivated merely to make money. Commendably, defendant is described as a good father and son and has an impressive history of hard work. Further to his credit, Defendant has also agreed to pay restitution to the United States in the amount of $1500 for the proper destruction of these chemicals

### iii. The Need For The Sentence To Deter, Protect, Provide Just Punishment, and to Afford Sufficient General Deterrence for the Crime

Section 3553(a)(2) requires the court to consider the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The defendant in this case was illegally importing and selling both ozone depleting substances (HCFC 22, commonly known as R 22) and greenhouse gases (the HFCs). The prosecution of this defendant serves as an important general deterrent, given the vital environmental regulatory system he was undermining. The Montreal Protocol is the only United Nations treaty ratified by every country in the world. The Protocol and the Kigali Amendment are critical to restoring the planet's ozone layer and curbing the effects of climate change. Indeed, actions taken under the Protocol have caused the total column ozone (TCO) to recover, such that TCO is expected to return to 1980 values around 2066 in the Antarctic, around 2045 in the Arctic, and around 2040 for the near-global average (between latitudes 60°N–60°S).[5] Undermining these important environmental regulations

---

[5] World Meteorological Organization, Ozone Research and Monitoring, Scientific Assessment of Ozone Depletion 2022, *available at* https://csl.noaa.gov/assessments/ozone/2022/downloads/2022OzoneAssessment.pdf

9

risks undoing this progress and places the planet in peril. It is therefore important that individuals who seek to undermine these regulations for profit are prosecuted and held to account, so that others contemplating such actions may be deterred.

In this case, defendant faces restitution (calculated to be $1,500), for the cost of disposal of the chemicals, and a guideline sentence between 0 and 6 months of incarceration (discussed further below). The sentence recommended by the United States is sufficient but not greater than necessary to achieve the goals of sentencing.

## IV

## **RESTITUTION**

The cost of properly disposing of the chemicals smuggled by the defendant is approximately $1,500. The parties jointly recommend that the Court order the defendant to pay that amount, payable as follows:

| Victim | Amount |
|---|---|
| NFC Collections Section<br>Attn: DOJ Restitution<br>Re: FP&F 2023250400008001<br>P.O. Box 68907<br>Indianapolis, IN 46268 | $1,500.00 |

# V
# CONCLUSION

The defendant conspired to illegally import into the United States from Mexico, and then sell for his personal profit, ozone depleting substances in violation of the Clean Air Act and greenhouse gases in violation of the American Innovation and Manufacturing Act. For the foregoing reasons, the United States requests that the Court sentence Defendant Hart to 3 years of probation, restitution of $1,500, and a $100.00 special assessment.

Dated: January 24, 2025.

Respectfully submitted

TARA K. MCGRATH
United States Attorney

s/ *Mark W. Pletcher*
MARK W. PLETCHER
Assistant U.S. Attorney

s/ *Stephen Da Ponte*
STEPHEN DA PONTE
Special Assistant U.S. Attorney